IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 3, 2004

## TONY MABRY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-24164    Carolyn Wade Blackett, Judge**

_____

**No. W2003-02197-CCA-R3-PC  - Filed September 24, 2004**

_____

Petitioner, Tony Mabry, appeals the trial court's dismissal of his petition for post-conviction relief. Petitioner argues that his trial counsel rendered ineffective assistance of counsel because she (1) failed to request a pre-trial voice line-up; (2) failed to cross-examine the victim about his prior statements to the police; and (3) failed to subpoena the police officer who took the victim's initial statement to testify at trial. After a thorough review of the record, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Scott Hall, Memphis, Tennessee, for the appellant, Tony Mabry.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Gail Vermaas, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Following a jury trial, Petitioner was convicted of especially aggravated robbery and sentenced to thirty-nine years in the Tennessee Department of Correction. Upon appeal, Petitioner's conviction was upheld, but his sentence was modified to twenty-nine years because the trial court misapplied four enhancement factors in determining the length of Petitioner's sentence. *State v. Tony Mabry*, No. W1999-01438-CCA-R3-CD, 2000 WL 33288754, *4 (Tenn. Crim. App., Jackson, June 28, 2000), *no perm. to appeal filed*. The facts surrounding Petitioner's conviction were summarized by this Court in Petitioner's direct appeal as follows:

> Late in the night of March 9, 1997, Curtis Sanders, a fifty-five year-old man, stopped at the apartment of Mary Brown. A repair man, he was to perform some

work for her. When he knocked at her door, he received no answer from the apartment. But knocking again, he heard a man, the defendant, from upstairs, outside the apartment, saying, "Not at home!" Sanders, familiar with the defendant's face, knew the man as "Tony." Sanders began to walk away.

While leaving, Sanders was approached by this man, "Tony," and another unidentified man. Sanders, surrounded and afraid, was unable to return to his vehicle, and therefore he returned quickly to Brown's door. At this door, he was attacked from behind, hit with a bottle, and kicked into submission by the two men. He attempted to fight back but, in the end, to no avail. The men stole Sanders' money, watch, and beeper and then fled.

The defendant was arrested identified from a photo-array by Sanders, and identified by voice by Mary Brown.

*Mabry*, 2000 WL 33288754, at *1.

## I. Post-Conviction Hearing

Petitioner filed a pro se petition for post-conviction relief which was subsequently amended alleging that his counsel rendered ineffective assistance at trial. Petitioner testified at the post-conviction hearing that his counsel had not interviewed his mother or her friend, Ann Perry, until the day of trial. As a result, trial counsel did not learn that there were two other alibi witnesses who lived out-of-state. Petitioner said that he elected to proceed to trial anyway.

Petitioner testified that the victim said that he did not know who robbed him in his initial statement to the police, but identified Petitioner by name when he testified at trial. Petitioner said that his trial counsel failed to point out the inconsistencies between Mr. Sanders' trial testimony and his prior statements. In addition, Petitioner said that his trial counsel did not subpoena the police officer who took Mr. Sanders' statement. Later, Petitioner conceded that his trial counsel questioned Mr. Sanders about his earlier description of the perpetrator as five feet nine inches tall when Petitioner was over six feet tall and provided Mr. Sanders with a copy of his prior statement.

Petitioner testified that his trial counsel never interviewed Ms. Brown and never requested a voice identification line-up prior to trial. Instead, Petitioner was required to stand up at trial and repeat the words, "Shut up, sucker," during Ms. Brown's testimony. Ms. Brown identified Petitioner at trial as the perpetrator based on her recognition of his voice.

Petitioner initially testified that his counsel did not request a transcript of the preliminary hearing but later conceded on cross-examination that he only knew that he did not receive a copy of the transcript. Petitioner said that his trial counsel did not explore any defenses and urged him to take the State's offer of a plea agreement which carried a sentence of twenty-five years. Petitioner said that he did not take the plea agreement because he was innocent.

Petitioner testified that his trial counsel failed to take his advice during voir dire as to which potential jurors should be rejected. Petitioner also pointed out that his counsel failed to call an expert witness to rebut the State's evidence that Mr. Sanders was heavily sedated when he gave his initial statement. Petitioner said that his medical expert would have testified that Mr. Sanders was not on any drugs at the time he gave his statement to the police.

On cross-examination, Petitioner conceded that his counsel met with him three or four times prior to trial and kept him apprized of his case's development. He admitted he did not personally know whether or not counsel interviewed his mother prior to trial or whether counsel reviewed the preliminary hearing transcript.

Counsel testified that she had worked for the public defender's office in Shelby County for over ten years with the majority of time spent with cases involving violent crimes. Counsel said that she met with Petitioner thirteen times prior to trial and spoke with Petitioner's mother at least three times before the trial began. Either she or her investigator interviewed all of the witnesses on Petitioner's list, but she did not know about the two out-of-state witnesses until the day of trial. Counsel said that Petitioner decided to proceed to trial without these witnesses.

Counsel testified that she reviewed the transcript of Petitioner's preliminary hearing and made notes in the margins of her typed copy. Counsel had no independent recollection of the conversations that occurred during voir dire but stated that it was her usual practice to consult with her clients during the process. Counsel assumed that she did so in Petitioner's case. Counsel advised Petitioner to accept the State's offer of a plea agreement because the sentence extended by the agreement was the minimum applicable to a Range II offender.

Counsel said that Mr. Sanders, in his initial statement, said that he knew Petitioner when he saw him but conceded that Mr. Sanders did not call Petitioner by name in his statement as he did at trial. Counsel said, however, that Mr. Sanders' statement was not too different from the substance of his trial testimony. Petitioner was often at the apartment complex where the incident occurred because his girlfriend lived there. Counsel said that she did cross-examine Mr. Sanders about the discrepancies between the description of the perpetrator that he gave the police and Petitioner's actual appearance at trial. Counsel said that she did not talk to Mr. Sanders prior to trial because he would not return her telephone calls. Counsel said that her investigator interviewed Ms. Brown twice.

## II. Findings of Fact

Petitioner initially argues that the post-conviction court did not make specific findings of fact as to his allegations that counsel was ineffective for failing to request a voice identification line-up prior to trial and for failing to effectively impeach Mr. Sanders. The post-conviction court is required to set forth all of the grounds presented by the petitioner and its findings of fact and conclusions of law as to each ground in a written order or memorandum at the conclusion of the post-conviction hearing. Tenn. Code Ann. § 40-30-211(b). The purpose of this requirement,

however, is to facilitate appellate review, and this Court has previously concluded that reversal is not required if the record is otherwise adequate for review. *State v. Swanson,* 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984); *Randy Caldwell and Stevie W. Caldwell v. State*, No. M2001-00334-CCA-R3-PC, 2002 WL 31730875, *13 (Tenn. Crim. App., Nashville, Dec. 4, 2002), *perm. to appeal denied* (Tenn. 2003); *State v. William Makransky*, No. E2000-00048-CCA-R3-CD, 2001 WL 725303, *12 (Tenn. Crim. App., Knoxville, June 28), *perm. to appeal denied* (Tenn. 2001).

Based on the evidence presented at the post-conviction hearing, the trial court accredited the testimony of Petitioner's counsel and found that she rendered assistance to Petitioner within the range of competence expected from a criminal lawyer as outlined in *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1974), as to all issues raised by Petitioner. The trial court further found that Petitioner had not proven any of his factual allegations of ineffective assistance of counsel by clear and convincing evidence. The post-conviction court's findings of fact and conclusions of law are sufficient to allow for proper appellate review.

## III.  Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id.*; *State v. Burns*, 6 S.W.3d, 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter*, 523 S.W.2d at 936. In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the

components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Analysis

Petitioner argues that his trial counsel was ineffective for failing to request a pre-trial voice identification line-up for Ms. Brown. Petitioner contends that the fact that Petitioner was required to stand up in court and repeat the words, "Shut up, sucker," which were spoken by the perpetrator during the commission of the crime, was highly prejudicial. Petitioner also contends that the in-court identification prevented Petitioner's counsel from effectively challenging Ms. Brown's credibility.

At trial, Ms. Brown testified that she was familiar with Petitioner's voice because her apartment and Petitioner's girlfriend's apartment shared a common wall. Ms. Brown said that Petitioner had a "heavy" voice, and she had heard him speak through the wall every day for the prior six months. Petitioner's counsel objected when the State asked Petitioner to speak in court, but the objection was overruled. A defendant may be compelled to give evidence in court which is not testimonial. *State v. Meeks*, 867 S.W.2d 361, 376 (Tenn. Crim. App. 1993) (citations omitted). "[T]he privilege against self-incrimination [is] not violated by compelling a defendant to speak and to utter words purportedly uttered by the assailant in order for witnesses to consider the utterances for identification purposes." *Id.* (citing *United States v. Wade*, 388 U.S. 218, 222-223, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967)).

While the effect may have been less dramatic if Ms. Brown's identification of Petitioner's voice had occurred during a pre-trial line-up as opposed to an in-court identification, Petitioner has failed to show that he was prejudiced by counsel's failure to request such a line-up. Ms. Brown was not the only witness who identified Petitioner as the perpetrator. Mr. Sanders identified Petitioner from a pre-trial photographic line-up and at trial. Both Ms. Brown and Mr. Sanders knew who Petitioner was because he frequently visited his girlfriend at the apartments where the incident occurred. Petitioner has not shown that the result of his trial would have been any different had Ms. Brown identified Petitioner's voice before the trial instead of during the trial. Petitioner is not entitled to relief on this issue.

Petitioner argues that his trial counsel was ineffective because she failed to effectively impeach the victim by introducing his prior inconsistent statements. Petitioner said that Mr. Sanders initially said that he did not know who the perpetrators were. At trial, however, Mr. Sanders referred to the perpetrator by the name "Tony" and implied that he knew Petitioner very well. Petitioner conceded, however, that his counsel cross-examined Mr. Sanders about the discrepancies between the physical description of the perpetrator which he gave the police officers and Petitioner's actual appearance at trial. Petitioner's counsel said that Mr. Sanders identified Petitioner at the preliminary hearing.

Mr. Sanders' statement was taken eight days after the incident following Mr. Sanders' release from the hospital. In his statement, Mr. Sanders stated that he could identify one of the perpetrators

and had identified that individual as Petitioner from a photographic line-up prior to his statement. When asked whether he had seen Petitioner before, Mr. Sanders replied that he "may have." At trial, Mr. Sanders said that he had seen Petitioner at Ms. Brown's apartment complex before the incident. Petitioner argues that the victim's evasiveness about what he said in his earlier police statement during cross-examination should have prompted counsel to call the police officer who recorded Mr. Sanders' statement as a witness.

Based upon our review of the record, we cannot conclude that Petitioner has shown by clear and convincing evidence that his trial counsel's assistance fell below the level of competence required of criminal defense lawyers. Petitioner's counsel thoroughly and ably cross-examined Mr. Sanders about his prior inconsistent statements. Petitioner's claims of ineffectiveness are addressed for the most part to counsel's choice of trial strategy or tactics which this Court will not second guess, armed with the benefit of hindsight. *Hellerd*, 629 S.W.2d at 9. Moreover, Petitioner did not produce the police officer who took Mr. Sanders' statement at the post-conviction hearing. Without any proof at the post-conviction hearing as to the testimony that a witness would have offered, the petitioner cannot demonstrate that he was prejudiced by the failure of the witness to be interviewed or called on his behalf. *See Black*, 794 S.W.2d at 757. Petitioner is not entitled to relief on this issue.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE