IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville March 26, 2014

## GEORGE SCOTT MASON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 17445     Honorable Robert G. Crigler, Judge**

_____

**No. M2013-01170-CCA-R3-PC - Filed April 23, 2014**

_____

The Petitioner, George Scott Mason, appeals the post-conviction court's denial of relief for his conviction of possession of a Schedule II substance for resale. On appeal, the Petitioner argues that the post-conviction court erred in failing to make specific findings of fact and conclusions of law and that he received ineffective assistance of counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

James Ronald Tucker, Jr., Shelbyville, Tennessee, for the Defendant-Appellant, George Scott Mason.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On February 20, 2011, the Petitioner was arrested on an outstanding warrant after a traffic stop. After arresting the Petitioner, the police officers searched the vehicle and found marijuana and crack cocaine weighing 1.5 grams. The Petitioner was subsequently indicted by the Bedford County Grand Jury for possession of a Schedule II substance for resale, possession of a Schedule IV substance for delivery, simple possession of a Schedule IV

substance, and introduction of contraband into a penal institution.[1] On January 23, 2012, the Petitioner entered a negotiated guilty plea to possession of a Schedule II substance for resale. He received a sentence of 12 years in confinement as a multiple offender to be served at 35 percent. Pursuant to the plea agreement, the remaining charges were dismissed. On July 5, 2012, the Petitioner filed a timely pro se petition for post-conviction relief. He was subsequently appointed counsel, and three amended petitions were filed alleging, inter alia, ineffective assistance of counsel.[2]

At the February 27, 2013 evidentiary hearing, the Petitioner testified that counsel was appointed to represent him at trial, and soon after his appointment, counsel filed a motion to withdraw based on a conflict of interest. At the hearing on the motion, counsel informed the court that his office previously represented a Drug Task Force confidential informant who had attempted to set the Petitioner up for a drug sale but was unsuccessful. The court denied the motion to withdraw, noting that the former client was not on the State's witness list and had nothing to do with the instant case. The Petitioner believed that counsel should have looked further into withdrawing despite the trial court's ruling.

The Petitioner acknowledged that counsel provided discovery to him, but claimed that he was "denied access" to the arrest report of his traffic stop. He testified that he asked counsel to file a motion to suppress evidence obtained from the search of his vehicle but that counsel laughed and told him that he could not file a motion to suppress without his supervisor's permission. He further claimed that counsel told him that "he would preserve th[e] right to file an appeal [on the legality of the search]," which was the reason that he accepted the plea.

The Petitioner testified that he informed counsel that he and the assistant district attorney prosecuting the case ("the ADA") had a "small history" because he sued the ADA along with 15 to 20 other government officials in 2007. He acknowledged that a federal court granted the ADA summary judgment relief and that the two never met in court. He further agreed that his suit was ultimately dismissed as to all parties. Nevertheless, he maintained that he did not get a "fair shake" in the instant case because of his history with the ADA. He testified that he asked counsel if he could have a "moment of [the ADA's] time to conduct [his] own plea agreement" but that the ADA told counsel that "since [the Petitioner] sued him[,] he wouldn't be available for [the Petitioner] and pick a number between 12 [years] and 20 [years]."

---

[1] The Petitioner did not include the indictments in the record on appeal.

[2] The second amended petition was filed by the Petitioner, pro se.

On cross-examination, the Petitioner agreed that the ADA had "no obligation to speak with [the Petitioner]" and acknowledged that the ADA agreed to allow him to plead to the minimum sentence of 12 years for his Class B felony. He further acknowledged that during his guilty plea hearing, he testified that no one had promised him anything to get him to plead guilty or coerced him to accept the plea deal. He maintained, however, that he believed counsel was going to file a certified question of law to appeal the legality of the search.

Counsel testified that he was appointed to represent the Petitioner and handled his case after it was indicted in circuit court. He requested discovery from the State and conducted his "normal investigation," including interviewing police officers and reviewing the video recordings of the incident. He discussed the evidence with the Petitioner, and the Petitioner shared his "side of the case" with counsel. Counsel believed he had an adequate understanding of the evidence the State had against the Petitioner as well as the Petitioner's version of events.

Counsel testified that he filed a motion to withdraw "out of an abundance of caution" because his office had represented an individual who had tried to make a controlled buy from the Petitioner. Counsel presented all of the information about the former client to the court and the State informed the court and counsel that it did not intend to call the former client in the instant case. The court concluded that there was no conflict and denied the motion to withdraw. Counsel believed he could zealously represent the Petitioner and pursue his defense notwithstanding the motion to withdraw.

Counsel recalled that he and the Petitioner discussed filing a motion to suppress, but after reviewing all of the evidence Counsel told the Petitioner that there was no legal basis to support the motion. Counsel denied the Petitioner's claim that he needed permission from his supervisor to file a motion to suppress, and he maintained that he does not "have to get permission from [his supervisor] to do anything." He asserted that if the facts had warranted a motion to suppress he would have filed it. He also denied telling the Petitioner he would reserve a certified question of law regarding the legality of the search. He agreed that the State and trial court would have had to agree to the condition in order to reserve a certified question for appeal, and he confirmed that there was no mention of such a condition during the guilty plea hearing.

The Petitioner informed counsel of his "issues" with the ADA and made it "obvious that [he] didn't care for [the ADA]." Counsel recalled that the Petitioner requested to speak to the ADA but that the ADA did not agree to speak to the Petitioner. However, he did not believe that the ADA disliked the Petitioner or that there was "any vindictive prosecution involved" in the Petitioner's case. He noted that the ADA offered a minimum sentence for the Petitioner's Class B felony and dismissed his other charges.

Following the hearing, the post-conviction court made extensive oral findings regarding the Petitioner's claims. In relevant part, the court found as follows:

First off, as to the allegation of ineffective assistance of counsel for not filing a motion to suppress, if you look at Exhibit 1, the transcript of the plea acceptance hearing . . . . [w]hen [the State] gave the factual basis . . . . I asked [the Petitioner] if he heard what [the State] said happened in the case and he said yes, sir.

I said is that what happened and he said yes, sir.

I recall that there was an outstanding warrant against [the Petitioner] so I have to accredit [counsel]'s testimony that there would be no good faith basis for a suppression motion in the case.

The Petitioner has not shown in this hearing that he would have prevailed had there been a suppression hearing. The burden of proof in this particular case is on the Petitioner.

As to the alleged conflict [counsel's office] had . . . . Counsel filed the motion. So if there was any error in that, in me not granting the motion, it was on me and not on [counsel]. All he can do is file the motion.

Even if there was error for me not to grant that motion, I don't think the [P]etitioner has proven that affected the outcome in the case and I certainly don't think it had anything to do with it.

Nor do I think the fact that he sued [the ADA] before had any affect on the case . . . . His settlement was the minimum sentence on just for that charge alone. The [other charges] were both dismissed.

There is certainly no evidence of being vindictive on [the ADA's] part.

I believe that [the ADA] said I don't want to talk to [the Petitioner] . . . [b]ut personally[,] I think it is a very poor practice for a prosecutor to talk to the defendant. Certainly can't do it without the defendant's attorney being present but even when the defendant instigates it, wants to talk to the prosecutor with his attorney present, still a pretty poor idea. Certainly after having been sued I can think it would be reasonable that he would not want to

-4-

speak to [the Petitioner] with [counsel] present least [sic] he open himself up for a subsequent lawsuit.

The court denied relief in a written order dated March 26, 2013. The Petitioner filed a timely notice of appeal to this court on April 25, 2013.

## ANALYSIS

On appeal, the Petitioner asserts that the post-conviction court erred in failing to make specific findings of fact and conclusions of law and maintains that he received ineffective assistance of counsel. Additionally, he asserts that the cumulative effect of counsel's errors deprived him of the right to a fair trial and competent representation and, therefore, entitles him to relief. The State responds that the post-conviction court's failure to make written findings of fact and conclusions of law is harmless error and that the Petitioner failed to establish ineffective assistance of counsel. Accordingly, the State maintains that the post-conviction court properly denied relief. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

**I. Written Findings and Conclusions.** The Petitioner first asserts that the post-conviction court committed reversible error because it failed to make specific written

findings of fact and conclusions of law. The Petitioner correctly asserts that the post-conviction court is required to set forth its findings of fact and conclusions of law in a final written order with regard to each ground raised. See T.C.A. § 40-30-111(b) (requiring the court to enter an order containing its findings of fact and conclusions of law for each ground raised by the petitioner); Tenn. R. S. Ct. 28, § 9(A) (stating that the order must contain specific findings of fact and conclusions of law for each issue raised by the petitioner). The purpose of this requirement, however, is to aid in appellate review; thus, the failure to meet the requirement does not require reversal where the record is sufficient to effectuate a meaningful appellate review. See State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984); George v. State, 533 S.W.2d 322, 326 (Tenn. Crim. App. 1975). Where the post-conviction court includes adequate oral findings on the record, the failure to include written findings of fact and conclusions of law may be deemed harmless error. See Ralph E. Thompson, Jr. v. State, No. E2001-0003-CCA-R3-PC, 2002 WL 392820, at *7 (Tenn. Crim. App. Mar. 14, 2002) (citing State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987); Swanson, 680 S.W.2d at 489).

Here, the post-conviction court issued a written order denying relief, stating only that the Petitioner failed to establish deficient performance or prejudice arising therefrom. As correctly noted by the Petitioner, the order fails to include specific findings of fact with regard to each ground and thus fails to meet the statutory requirement. However, the court made extensive oral findings at the conclusion of the evidentiary hearing, and the record on appeal includes the transcripts from the motion to withdraw hearing and guilty plea hearing. Therefore, we conclude that the record on appeal is adequate for appellate review and that any error by the trial court is harmless.

**II. Ineffective Assistance of Counsel.** The Petitioner next asserts that he received ineffective assistance of counsel. To support his contention, he maintains that counsel was ineffective by (1) failing to file a motion to suppress; (2) failing to seek further review following the denial of the motion to withdraw; (3) failing to "deal honestly" with the Petitioner by misleading him as to the terms of the guilty plea agreement; and (4) failing to seek the disqualification of the prosecutor.

We begin by repeating the well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation

encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

In the instant case, the Petitioner first asserts that counsel was ineffective because he failed to file a motion to suppress the evidence obtained during the search of the Petitioner's vehicle. In that regard, we note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

Here, the post-conviction court accredited the testimony of counsel that he believed there was no legal basis to file a motion to suppress and further concluded that the Petitioner failed to establish that he would have been successful had counsel filed such a motion. Upon review, we conclude that the record supports the post-conviction court's findings and conclusions. The Petitioner put forth no evidence that counsel's decision not to file a motion to suppress was based upon inadequate preparation such that it should not be afforded proper deference. To the contrary, the record establishes that counsel met with the arresting police officers, reviewed the State's evidence, and met with the Petitioner to discuss the case. At the post-conviction hearing, counsel testified that he informed the Petitioner that he believed there were no grounds upon which to file a motion to suppress, and opined that it would have been frivolous to file the motion.[3] At the Petitioner's guilty plea hearing, the Petitioner assured the court that he was satisfied with counsel's representation. When the court asked whether there was anything more counsel could have done to investigate or work on the Petitioner's case, the Petitioner answered "[n]o, sir." Thus, without any showing otherwise by the Petitioner, deference is given to counsel's decision not to file a motion to suppress. See House, 44 S.W.3d at 515 (citing Goad, 938 S.W.2d at 369); see also, Titus Miller v. State, No. W2012-01105-CCA-R3-PC, 2013 WL 1908705, at *9 (Tenn. Crim. App. May 7, 2013) (holding that trial counsel was not ineffective in failing to file a motion to suppress where counsel opined that the motion would not be successful). Accordingly, the Petitioner has failed to establish by clear and convincing evidence that counsel was deficient.

Similarly, the Petitioner asserts that counsel was ineffective for failing to seek further review after the denial of the motion to withdraw. The post-conviction court noted that counsel filed the motion to withdraw and presented the facts of the possible conflict to the court, which is "[a]ll he can do[.]" Like the post-conviction court, we fail to see what more counsel should have done. In any event, the post-conviction court concluded, and we agree, that the Petitioner failed to establish prejudice. At the post-conviction hearing, counsel testified that he filed the motion out of an abundance of caution, but after the court denied the motion he did not have "any problem zealously representing [the Petitioner]." Further, at the hearing on the motion to withdraw, the State clarified that counsel's former client had nothing to do with the Petitioner's current case and would not be called as a witness. Although the Petitioner testified that he believed counsel should have further pursued the motion to withdraw, there is no evidence in the record to confirm an actual conflict of

---

[3] We need not determine whether the search of the vehicle violated the Petitioner's constitutional rights because his guilty plea waived any such complaint. See, e.g., State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999) ("[T]he voluntary entry of an informed and counseled guilty plea . . . waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea." (citing Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997)). Our analysis turns on the conduct of counsel and whether his decision to not file a motion to suppress "falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462.

interest or establish that counsel's performance was impeded by the possible conflict. Rather, counsel successfully negotiated a plea agreement for the minimum sentence on the Petitioner's Class B felony and all other charges were dismissed. In other words, the Petitioner failed to establish that, but for counsel's failure to withdraw, the Petitioner would have not pleaded guilty and would have insisted on going to trial. See Hill, 474 U.S. at 59. Accordingly, we conclude that the Petitioner has failed to establish that he was prejudiced in any way by counsel's performance.

Next, the Petitioner asserts that counsel was ineffective by failing to "deal honestly" with the Petitioner. He asserts that counsel "enticed" the Petitioner to accept the plea bargain by assuring the Petitioner that he would reserve a certified question of law regarding the legality of the search of his vehicle.[4] We note that the post-conviction court failed to specifically address this ground in either its oral findings or the written order denying relief. Nevertheless, as discussed above, the lack of such findings does not always require reversal of the trial court's judgment. See Swanson, 680 S.W.2d at 489. Here, after reviewing the record, which includes the transcript of the guilty plea hearing, testimony and evidence presented at the post-conviction hearing, and the post-conviction court's final holding that the Petitioner failed to establish ineffective assistance of counsel, we conclude that the record is sufficient for appellate review. See Claude F. Garrett v. State, No. M2011-00333-CCA-R3-PC, 2012 WL 3834898, at *24 (Tenn. Crim. App. Sept. 5, 2012) (holding that the post-conviction court's failure to make specific findings on a particular ground did not require reversal where the transcript of the trial and post-conviction court's conclusion that the petitioner failed to establish ineffective counsel provided a record sufficient for appellate review). Thus, we will consider the substance of the Petitioner's claim.

At the guilty plea hearing, the Petitioner agreed with the facts as presented by the State and informed the court he was guilty of count 1, possession of a Schedule II substance for resale. The State explained that per the agreement the Petitioner "will receive a sentence of 12 years at 35 percent as a Range II offender[.]" The court and the Petitioner then had the following colloquy:

> COURT:        [Petitioner], did you hear what [the ADA] just said?
>
> PETITIONER:   Yes, sir.
>
> COURT:        Is that what you have agreed to?

---

[4] We note that the Petitioner's claim is solely one of ineffective assistance of counsel. Interestingly, he does not contest the validity of his guilty plea or assert that it was involuntary or unknowing.

PETITIONER:     Yes, sir.

COURT:          Did [counsel] negotiate that agreement for you and explain it to you before you signed the Petition to Plead Guilty we talked about?

PETITIONER:     Yes, sir.

COURT:          Do you want me to accept your plea of guilty pursuant to that agreement?

PETITIONER:     Yes, sir.

. . . .

COURT:          Has anybody promised you anything to get you to plea[d] guilty that has not [been] stated out loud in court today.

PETITIONER:     No, sir.

. . . .

COURT:          Do you understand that by pleading guilty there would be no further trial of any kind so that by pleading guilty you are waiving your right to trial, to jury trial and to appeal?

PETITIONER:     Yes, sir.

. . . .

COURT:          Is anything [counsel] could have done to research or investigate or otherwise work on the case that you can think of that [counsel] has not done?

PETITIONER:     No, sir.

COURT:          Do you have any questions about anything that has been said or done in court today?

PETITIONER:     No, sir.

At the post-conviction hearing, the Petitioner testified that he only pleaded guilty because counsel assured him that he would reserve a question of law to appeal regarding the legality of the search of his vehicle. He acknowledged, however, that neither the State nor his counsel mentioned a certified question of law as a condition of the agreement at the guilty plea hearing, and agreed that he did not tell the court of such a condition. Counsel, on the other hand, testified that he "never" told the Petitioner he would reserve a certified question of law for appeal and he noted that such a condition would have to be made part of the agreement and stated out loud at the guilty plea hearing. He confirmed that there was no mention of the certified question during the guilty plea hearing and reiterated that he never discussed an appeal with the Petitioner.

Notwithstanding the Petitioner's testimony at the post-conviction hearing, we are unpersuaded that counsel "enticed" the Petitioner to plead guilty by falsely assuring the Petitioner he would reserve a certified question of law. We note that a petitioner's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Here, the Petitioner heard the terms of the agreement read out loud in court at the guilty plea hearing and assured the court that there were no additional promises made to him that were not stated in the agreement. Nothing in the record dispels the reliability of the Petitioner's testimony at the guilty plea hearing. Further, although the post-conviction court failed to make a specific finding as to this claim, it is evident from its findings on related issues that it accredited the testimony of counsel over that of the Petitioner. In stark contrast to the Petitioner's testimony at the post-conviction hearing, counsel testified that he never discussed an appeal with the Petitioner and confirmed that it was not part of the plea agreement. Based on the record, we conclude that the Petitioner has failed to establish ineffective assistance of counsel in this regard.

Finally, the Petitioner asserts that counsel was ineffective by failing to seek disqualification of the prosecutor. Disqualification of a prosecutor in a criminal case is required where there is "an actual conflict of interest, which includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of compromising interests or loyalties." State v. Culbreath, 30 S.W.3d 309, 312 (Tenn. 2000). Where there is no actual conflict of interest, disqualification may be required where "conduct has created an appearance of impropriety." Id. at 312-13. In the instant case, the Petitioner asserts that counsel knew of the history between the ADA and the Petitioner yet failed to make the trial court aware of "alleged grudge and litigation[,]" which he maintains establishes ineffective assistance of counsel and "calls into question the reliability of the outcome of the underlying proceedings."

At the post-conviction hearing, the Petitioner emphasized the fact that the ADA refused to meet with him and told him to pick a number between 12 years and 20 years. In contrast, counsel testified that he did not believe that the ADA disliked the Petitioner or that there was "any vindictive prosecution involved" in the Petitioner's case. He noted that the ADA agreed to a minimum sentence for the Petitioner's offense and dismissed the remaining charges. The post-conviction court implicitly accredited the testimony of counsel over that of the Petitioner and found "no evidence of being vindictive on [the ADA's] part." The court noted that it is "very poor practice for a prosecutor to talk to the defendant" and opined that in this particularly case it was "reasonable that [the ADA] would not want to speak to [the Petitioner]" to avoid a subsequent lawsuit. Further, the court reasoned that there was no prejudice to the Defendant as evidenced by the fact that he received the minimum sentence for the Class B felony. The record does not preponderate against the post-conviction court's findings, and supports its conclusion that counsel was not ineffective in this regard. The Petitioner is not entitled to relief.

**III. Cumulative Effect.** Lastly, the Petitioner asserts that the cumulative effect of counsel's alleged errors deprived him of the right to a fair trial and competent representation and, therefore, warrants reversal. The cumulative error doctrine recognizes that in some cases there may be multiple errors committed during the trial proceedings, which standing alone constitute harmless error; however, considered in the aggregate, these errors undermined the fairness of the trial and require a reversal. State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). However, the cumulative error doctrine properly applies only where there has been more than one *actual error*. Id.; see also, Leonard v. State, No. M2006-0654-CCA-R3-PC, 2007 WL 1946662, at *21 (Tenn. Crim. App. Sept. 13, 2007) ("[A] Petitioner who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of such counsel's errors."). Because the Petitioner has failed to prove deficient representation on any issue, he cannot successfully claim that the cumulative effect of counsel's performance violated his constitutional rights. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE